

# THE ATTORNEY GENERAL
## OF TEXAS

:E DANIEL
NEY GENERAL

AUSTIN, TEXAS

October 6, 1949

Hon. J. E. McDonald
Commissioner of Agriculture
State Land Office Bldg.
Austin, Texas

Dear Sir:

Opinion No. V-923.

Re: Construction of Sec-
tion 11, House Bill
No.35, Acts 51st Leg-
islature.

Reference is made to your request for an opin-
ion as to the availability of the fees collected by the
Commissioner of Agriculture in accordance with the pro-
visions of Section 11, House Bill No.35, Acts 51st Leg-
islature, page 1127, for the purposes stated therein.

Section 1 of House Bill No.35 reads as follows:

"There is hereby established in this
State the following procedure for vegetable
plant certification:

"The purpose of the vegetable plant
certification law is to provide for the
purchaser of vegetable plants the benefit
of honest and reliable opinion of the free-
dom from such diseases and fungus infection
as can be determined by field inspection
prior to preparing the plants for shipment
to insure in so far as possible, proper hand-
ling and packaging the plants certified.

"The Commissioner of Agriculture is
charged with the duties of prescribing such
rules and regulations as are necessary to
the enforcement of the law. The appoint-
ment of qualified inspectors, collection of
fees, issuance of tags and the actual en-
forcement of the law.

"The firm or individual holding such
license and meeting the requirement of in-
spection are issued such certification stamps
or tags as may be deemed necessary, such
stamps or tags to be affixed to containers
carrying the certified plants."

Sections 10 and 11, read, respectively, as follows:

"Sec. 10. Inspection fees shall be as follows for tomato, cabbage, broccoli, collards, cauliflower, pepper and onions:

"At the time of applying for the certification a minimum fee of Five Dollars ($5) shall be paid, and for each acre over five (5) acres the fee shall be not less than twenty-five cents (25¢) nor more than One Dollar ($1); this fee to be paid at the time of application. The certification tag or stamp to be affixed to the container shall be ten cents (10¢) per thousand plants contained.

"Sec. 11. (1) Application for certification of sweet potato plants shall be made prior to harvesting time the preceding season. The fee to be paid at the time the application is made for this inspection shall be a minimum of Five Dollars ($5) and for acreage of more than five (5) acres the added fee of not less than twenty-five cents (25¢) per acre nor more than One Dollar ($1) per acre shall be paid. All plants lifted or shipped shall be packaged in bundles of one hundred (100) plants and a label or tag shall be affixed to each bundle. The price of labels or tags shall not be less than one cent (1¢) per label nor more than three cents (3¢) per label.

"(2) All such fees as are collected under this Act shall be deposited in the State Treasury in a special fund under the title of the Texas Vegetable Certification fund. The purpose of the fees being to pay for the enforcement of the law and to provide inspections called for; it further being the purpose to make the law self-supporting. (Emphasis added)

"(3) Out of the fees collected under this Act, the Chief of the Markets and Warehouse Division of the Department of Agriculture shall be paid in addition to the amount

of his salary in the general appropria-
tion bill in the sum of Four Hundred and
Eighty Dollars ($480) per annum; which
amount is hereby appropriated for said
purpose." (Numbering of paragraphs add-
ed)

Paragraph 3 of Section 11 clearly and definite-
ly makes a specific appropriation of $480 out of the fees
collected for the purpose of supplementing the annual
salary of the Chief of the Markets and Warehouse Divi-
sion, as fixed in the general appropriation bill for the
current biennium. Paragraph 2 of Section 11 does not
contain the words "which amount is hereby appropriated
for said purpose" found in paragraph 3. Therefore, we
must determine from the entire Act whether it was the in-
tent and purpose of the Legislature to appropriate the
balance of the fees collected by the Department of Agri-
culture for the purposes mentioned in paragraph 2.

We quote from Attorney General's opinion No.
V-887, as follows:

"Section 6, Article VIII of the Con-
stitution of Texas, in part, reads:

"'No money shall be drawn from the
Treasury, but in pursuance of specific ap-
propriations made by law; nor shall any
appropriation of money be made for a long-
er period than two years.'

"In the case of Pickle v. State Comp-
troller, 91 Tex. 484, 44 S.W.480 (1898),
Chief Justice Gaines, speaking for the
Court, said:

"'It is clear that an appropriation
need not be made in the general appropria-
tion bill. It is also true that no speci-
fic words are necessary in order to make
an appropriation; and it may be conceded,
that an appropriation may be made by impli-
cation when the language employed leads to
the belief that such was the intent of the
Legislature.'"

In 39 Texas Jurisprudence 205, Statutes, Section

110, it is said:

"It is elementary that a statute
will be construed in such manner as to
make it effective - that is, enforceable
and operative - if it is fairly suscep-
tible of such interpretation.  Thus where
two constructions might reasonably be
given a statute, of which one will effec-
tuate the legislative intent and purpose
and make the act operative, while the
other will defeat such intent and purpose
and render it inoperative, the former con-
struction will be adopted."

This law was enacted for the protection of pur-
chasers of vegetable plants therein named by assuring
them as far as possible that the plants are apparently
free from diseases and pests "as determined from field
inspection prior to the lifting of the plants for sale
or shipment."  It is a matter of common knowledge that
the production of these plants is a large and growing
industry in certain localities of this State.  It is
also a well known fact that many states have enacted
statutes prohibiting the importation or sale of such
plants grown in Texas, for the reason that this State
has not heretofore had a law providing for their pro-
per certification.  By the enactment of this law, the
Legislature intended to not only give the producer of
such plants the protection therein provided, but to give
the producer new fields in which to sell them.

If the Legislature has failed to make an appro-
priation of the fees collected for the purposes stated in
paragraph 2, Section 11, it necessarily follows that the
purposes of the law have failed.  The appropriation spe-
cifically made by paragraph 3, Section 11, also fails, for
the reasons no certification fees or fees for tags, stamps,
or labels will be collected.  You are not authorized to
issue certification tags, stamps, or labels unless there
has been a "field inspection prior to the lifting of the
plants for sale."  Such inspections cannot be made with-
out qualified inspectors to make them.  You cannot ob-
tain such inspectors unless funds have been made availa-
ble to pay them for their services.  Therefore, if the
Legislature has failed to appropriate the fees you are
authorized to collect and expend for the purposes stat-
ed in the law, the law must remain ineffective and in-
operative from October 5, 1949, until such time as the

Legislature appropriates such fees for the purpose of enforcing its provisions.

We do not believe the Legislature intended such a result. We think the Legislature intended to make the law operative and enforceable from its effective date and to make an appropriation of all fees collected for the purposes therein stated, and did make such appropriation. Such a construction is reasonable and neither violates the provisions of Section 6, Article VIII of the Constitution of Texas, nor any other provision of that document.

Furthermore, the Legislature evidently believed it had appropriated all the fees collected by the language used in paragraph 2, Section 11, or it would not have in plain language made the appropriations in paragraph 3 of the same section. Otherwise, it would be apparent that the Legislature had intentionally done a useless thing by appropriating fees which it knew could not be collected without an appropriation to enable you to collect them.

Therefore, it is our opinion that Section 11 of House Bill No.35, Acts 51st Legislature, Chapter 581, page 1127, constitutes a valid appropriation of the fees which the Commissioner of Agriculture is authorized to collect thereunder, for the purposes therein stated, for a period of years, beginning October 5, 1949, the day it becomes effective, and ending October 4, 1951.

## SUMMARY

House Bill No.35, Acts 51st Legislature, made a valid appropriation of all the fees collected thereunder by the Commissioner of Agriculture for the purposes stated therein for a period of two years, beginning October 5, 1949, the effective date of the Act, and ending October 4, 1951. A.G. Opinions Nos. V-887, V-895 and authorities there cited.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

APPROVED

Price Daniel
ATTORNEY GENERAL

By Bruce W. Bryant
Bruce W. Bryant
Assistant

BWB:amm:mw